UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTEL CAPITAL (CAYMAN) CORPORATION,
INTEL CAPITAL CORPORATION, DEUTSCHE
TELEKOM, AG

Petitioners,

v.

SHAN YI,

Respondent.

_____/

Case No. 15-mc-50406

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER GRANTING PETITIONERS' MOTION TO CONFIRM ARBITRATION AWARD [1] AND DENYING PETITIONERS' MOTION TO VACATE EVIDENTIARY HEARING [29]**

**I. INTRODUCTION**

Pending before the court are Intel Capital (Cayman) Corporation, Intel Capital Corporation, and Deutsche Telekom, AG (collectively "Petitioners") Petition/Motion to Confirm Arbitration Award [1] against Yi Shan ("Respondent") and Petitioners' Motion to Vacate Evidentiary Hearing and Consider Petition to Confirm Arbitration Award Pursuant to Fed. R. Civ. P. 78(b) [29]. The court has reviewed the briefing in this matter and conducted an evidentiary hearing on November 9, 2015. For the reasons discussed herein, the Court will **GRANT** Petitioners' Petition/Motion to Confirm Arbitration Award Dismiss [1] and **DENY** Petitioners' Motion to Vacate Evidentiary Hearing and Consider Petition to Confirm Arbitration Award Pursuant to Fed. R. Civ. P. 78(b) [29] as moot. The Court's Opinion and Order is set forth in detail below.

## II. BACKGROUND

In 2005, Respondent invested $100,000 in a business enterprise with Shuying Huang, an acquaintance from Wuhan, China. *See* Dkt. No. 13, p. 1 (Pg. ID No.287). Respondent was one of five "founders" of the resulting business: Airway Communications International Holding Company, Ltd. ("Airway"). *See* Dkt. No. 1-2, p. 2 (Page ID No. 20). Respondent worked for Airway for 10 months. *See* Dkt. No. 13, p. 1 (Pg. ID No.287). He was terminated in or around April 2009. *See id*. at 1–2 (Pg. ID No.287–88).

Earlier, on May 8, 2008, Petitioners and Respondent entered into a contractual relationship defined by the Second Amended and Restated Investors' Rights, Put Option, and Indemnity Agreement ("Second IRA"). *See* Dkt. No. 1, p. 3–4, ¶ 7 (Pg. ID No. 3–4). In November 2012, a dispute arose between the parties, which was referred to arbitration per the terms of Section 12.2(a) of the Second IRA. *See id*. at 3, ¶ 8; Dkt. No. 1-2, p. 21 (Pg. ID No. 39) ("Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be finally resolved by arbitration in … Hong Kong."). Petitioners sent a Notice of Arbitration on November 12, 2012. *See id.*

Although the Put Option Notice was successfully delivered to the address on file for Respondent in August 2011, courier notice of arbitration to that address in November 2012 was undeliverable because Respondent had moved. *See* Dkt. No. 16, p. 17 (Pg. ID No. 340). Petitioners claim that Respondent never updated his contact information, so they continued to serve him at his listed address and fax number from the Second IRA, pursuant to the document's terms. *See id*.

Peter Yuen represented Airway and the company's founders in the arbitration until April 14, 2014. *See* Dkt. No. 1-5, p. 5 (Pg. ID No. 184). Respondent stated at the hearing that he did

-2-

not authorize Yuen to represent him, although Yuen communicated that he "act[ed] for … Yi Shan" when Yuen filed an Answer to the Notice of Arbitration. Dkt. No. 19-4, p. 2 (Pg. ID No. 628). Once Yuen rescinded his representation, he requested that Respondents be notified of future communication via the addresses listed in the Second IRA. *See* Dkt. No. 1-5, p. 5 (Pg. ID No. 184). After that point, Respondent and his fellow founders took no action in the arbitration. *See id*. at 9 (Pg. ID No. 188). Correspondence to Respondent's address was undeliverable his listed fax number did not respond to transmissions *See id*. Additionally, the arbitrator sent an e-mail to the addresses previously used by Respondent, which did not elicit any response. *See id*. Respondent stated at the hearing that although this e-mail was received by his personal email account, he did not notice or open the e-mail prior to the arbitration. Finally, the arbitration tribunal retained the services of FTI Consulting to trace the addresses of the founders *See id*. at 63 (Pg. ID No. 242). FTI found residence or business addresses for all but Respondent. *See id*.

The arbitration tribunal took place on June 9, 2014. *See id*. at 9 (Pg. ID No. 188). Petitioners were the only parties in attendance. *See id*. Arbitrator Christopher Moger issued an award of approximately $139 million dollars against Respondent and Airway's other founders. *See id*. at 65 (Pg. ID No. 244).

### III. LEGAL STANDARD

Petitioners seek to confirm the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention"), June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997. *See* New York Convention (providing that a party may apply "for recognition and enforcement" of an arbitral award subject to the New York Convention); 9 U.S.C. §§ 204, 207 (providing that a

party may move "for an order confirming [an arbitral] award" in a federal court of the "place designated in the agreement as the place of arbitration if such place is within the United States").

A court must generally confirm the arbitration award unless it finds that there are grounds for refusal or deferral of the award, as specified in the New York Convention. *See* 9 U.S.C. § 207. Article V, subsection 1(b) of the New York Convention provides that a court may refuse to recognize or enforce an arbitral award, if the "party against whom the award is invoked was [1] not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or [2] otherwise unable to present his case." Appellate courts have interpreted this to mean that the arbitrator must "provide a fundamentally fair hearing," which "meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001) (quoting *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1295 (9th Cir.1987)).

"Nevertheless, parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997). Arbitration proceedings need not adhere to formal rules of procedure, though parties should have an opportunity to present their cases. *See Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 38 (1st Cir. 1985).

It is the party challenging enforcement of the arbitral award that bears the burden of proof. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004). "Defenses to enforcement under the New York Convention are construed narrowly, 'to encourage the recognition and enforcement of commercial arbitration

agreements in international contracts....' " *Id.* (quoting *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 335 (5th Cir. 1976)).

## IV. DISCUSSION

Under the New York Convention, a court with jurisdiction "shall confirm [an arbitration] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Respondent raised only one argument for refusal or deferral: that he was not given proper notice of the arbitration.[1] *See* Dkt. No. 13, p. 2 (Pg. ID No. 288).

### A.  Respondent Failed to Meet His Burden to Prove He Was Not Given Proper Notice

Courts have determined that notice satisfies due process concerns where it was the method of notice contractually stipulated to by both parties. *See First State Ins. Co. v. Banco de Seguros Del Estado*, 254 F.3d 354, 357 (1st Cir. 2001) ("the method chosen by the parties to receive notice … cannot be deemed to offend due process."). Under the terms of the Second IRA, "all notices (including, for the avoidance of doubt, notice of arbitration), requests, waivers and other communications made pursuant to this Agreement shall be in writing and shall be conclusively deemed to have been duly given and served to any other Party" when delivered to the addresses of listed fax numbers in the Second IRA. *See* Dkt. No. 1-2, p. 22 (Pg. ID No. 40). Respondent's listed address, like all other founders, was listed as the Airway office. *See id.* at 22–23 (Pg. ID No. 40–41). The Second IRA further provides that "[a] Party may change or supplement the addresses given above, or designate additional addresses" by providing the other

---

[1] Inadequate notice is not listed under the exclusive grounds for setting aside an arbitration award under the Federal Arbitration Act. *See* 9 U.S.C. § 10(a); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995). Thus, Respondent's argument that he did not receive adequate notice can only rely on protections offered under Article V of the New York Convention.

parties with written notice. *See id.* at 23 (Pg. ID No. 41). Respondent stated at the hearing that he believed Petitioners knew of his North American address due to the presence of his Canadian passport number within the Second IRA. *See* Dkt. No. 31-2, p. 2 (Pg. ID No. 866). Nonetheless, Respondent does not argue that he designated his North American address as an address where he was to receive notices or communications related to Airway.

The Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL), article 2, provides that notice "is deemed to have been received if it is physically delivered to the addressee or if it is delivered at his habitual residence, place of business or mailing address, or, if none of these can be found after making reasonable inquiry, then at the addressee's last-known residence or place of business." The Arbitration Ordinance in Hong Kong, where the arbitration in question was carried out, adopts UNCITRAL's notice requirement. *See* H.K. Arbitration Ordinance, Ch. 609, § 10.

The International Council for Commercial Arbitration urges tribunals to "do all that is reasonably possible to bring the existence of the arbitration and the appointment of the arbitral tribunal to the attention of the respondent and to have independent evidence of such efforts" where a party has changed addresses without notice. ICCA Handbook at 90. Here, the tribunal went so far as to hire a consulting firm to trace the current addresses of Airway's founders. *See* Dkt. No. 1-5, p. 63 (Pg. ID No. 242). Nonetheless, they were unable to ascertain Respondent's current address, in spite of these independent efforts. *See id.* Accordingly, under both the Second IRA's explicit instructions and under local and international arbitration rules, service upon Respondent's address as listed in the Second IRA—his last-known place of business—was proper. *See Intel Capital (Cayman) Corp. v. Hsia*, No. 15-cv-01287 (N. Cal. Oct. 16, 2015)

(entering judgment in favor of Petitioners and finding that Respondent's fellow founders were given sufficient notice of the arbitration but chose not to participate).

In his Response, Respondent alleged that he never received the e-mails sent by the arbitrator. *See* Dkt. No. 13, p. 4 (Pg. ID No. 290). At the hearing, he clarified this statement to reflect that he had in fact received the e-mail sent to his personal account ("shanyi@gmail.com"), but did not see or open the e-mail from the arbitrator because he only uses that e-mail account about once a month for online purchases. Petitioners note that the arbitrator's e-mail to Respondent did not receive any response stating that the message was returned as undeliverable, otherwise known as a "bounce-back" message. *See* Dkt. No. 1-5, p. 9 (Pg. ID No. 188). Other courts have applied a presumption of delivery to e-mails where the message was properly dispatched and the sender did not receive a "bounce-back" message. *See Am. Boat Co. v. Unknown Sunken Barge*, 567 F.3d 348, 353 (8th Cir. 2009); *Kennell v. Gates*, 215 F.3d 825, 829-30 (8th Cir. 2000). Nonetheless, we need not address this issue because the contract and arbitral rules call for physical delivery or fax, not e-mail.

## IV. CONCLUSION

In conclusion, it appears that Petitioners provided Respondent with "proper notice," as they contractually agreed upon in the Second IRA. Additionally, it appears that Petitioners and the arbitrator made a reasonable inquiry into the Respondent's whereabouts, including hiring a consultant to find his address and e-mailing him, although he failed to read the e-mail prior to the arbitration proceedings. The Court finds Respondent failed to carry his burden of establishing that he falls under the narrowly construed defenses to enforcement of arbitration awards under the New York Convention. Accordingly, for the reasons discussed in detail above, the Court

**GRANTS** the Petitioners' Motion to Confirm the Arbitration Award [1] and **DENIES**

Petitioners' Motion to Vacate the Evidentiary Hearing as moot.

      IT IS SO ORDERED.

Dated: November 13, 2015

                                         /s/Gershwin A Drain             
                                         HON. GERSHWIN A. DRAIN
                                         United States District Court Judge